**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RONALD B. WIELAND,**

                **Plaintiff,**

    v.                                           **CASE NO. 17-3199-SAC**

**(fnu) RUCKER, et al.,**

                **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action filed under 42 U.S.C. § 1983. The court has examined plaintiff's amended complaint and his response to the court's notice and order to show cause (NOSC) and enters the following findings and order.

### Nature of the Complaint

Plaintiff spent approximately 20 months in the Shawnee County Adult Detention Center between November 2015 and the filing of this action in November 2017. In this action, he claims the conditions of his confinement there violated his constitutional rights. The amended complaint presents the following claims: (1) On September 12, 2017, plaintiff's cell was flooded when the prisoner in the next cell intentionally caused the toilet to overflow with water and feces. Plaintiff notified staff of the flooding at approximately 10 p.m. A staff member gave plaintiff two towels and advised him that he would notify maintenance. Maintenance workers arrived the following morning to address the flooding, and plaintiff was moved to another cell. However, plaintiff states that the new cell also was filthy and had feces on the wall, door, and window. (2) Plaintiff complains of lockdowns at the jail that lasted 48 to 96

hours. During these periods, prisoners had no access to common areas of the jail, including the outdoor courtyard, exercise areas, or showers. They also could not access cleaning products during these periods. (3) Plaintiff claims that prisoners placed in disciplinary confinement were held in suicide prevention cells and close observation cells that lacked furniture, beds, toilets, and sinks. They also had no access to exercise areas, the dayroom, and other common areas during their disciplinary placement.

## Discussion

Because it appears plaintiff was in pretrial confinement during the relevant time, his claims of unconstitutional conditions are governed by the Due Process Clause of the Fourteenth Amendment. However, the Eighth Amendment standard provides the benchmark for such a claim. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

The analysis of a claim under the Eighth Amendment has two components. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This factor requires the prisoner to show that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* It is settled that the Constitution does not guarantee "comfortable prisons" and that only conditions "denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)(internal citations omitted). Prison officials meet this standard if they "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates'

safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001)(citation omitted).

Next, a prisoner must show the defendant prison officials had a "sufficiently culpable state of mind", a subjective component which requires a showing that defendants acted with deliberate indifference to the well-being of the prisoners in their care. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* It is not enough to establish that the official should have known of the risk of harm. *Id.*

Under this analysis, "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)(quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls ... the length of exposure to the conditions is often of prime importance." *Id.* Under this standard, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations ...' may meet the standard despite a shorter duration." *Id*. (citations omitted).

In order to state an Eighth Amendment violation, the conditions of a plaintiff's confinement must be "sure or very likely to cause serious illness and needless suffering," and give rise to "sufficiently imminent dangers." *Helling v. McKinney*, 509 U.S. 25, 33, 34 (1993). Notably, the Tenth Circuit has held that a situation

involving filthy cells and other conditions "'simply [did] not rise to the level of a constitutional violation'" where prisoners were exposed to the conditions for only a short duration. *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)). However, the Tenth Circuit also has recognized that, in particular, "exposure to the human waste of others carries a significant risk of contracting infectious diseases such as Hepatitis A, shigella, and others." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).

The amended complaint states that on the late evening of September 12, 2017, plaintiff reported to defendant Folds that there was "foul smelling water" in his cell (Doc. 10, p. 11). Mr. Folds advised plaintiff that he could not move him to another cell because it was third shift and he was not authorized to do so, but he stated he would put in a work order. Plaintiff asked for a mop or cleaning supplies. Mr. Folds stated that he had not brought supplies because it was the third shift, but he provided plaintiff with two towels to place on the floor. Plaintiff states the maintenance crew arrived "early the next morning" and identified the source of the water as coming from another cell. *Id*.

Plaintiff then asked defendant Reamer for medical treatment; he advised plaintiff to complete a form for sick call. Approximately one hour later, plaintiff was moved to a different cell, which he states was "the only available cell nearby." *Id.*

Considered in light of the governing standards, these facts do not state a claim for relief. Plaintiff advised defendant Folds of "foul-smelling water" in his cell, but there is no evidence that Mr. Folds knew that the water was coming from another cell or that

he was given information that reasonably suggested that plaintiff was in conditions that threatened his safety. Mr. Folds provided plaintiff with towels, and although plaintiff asserts these were inadequate, there is no suggestion that he gave Mr. Folds any additional information about the situation. Mr. Folds placed the work order, as he told plaintiff he would. None of these allegations supports a finding that defendant Folds acted with deliberate indifference.

Likewise, the actions of defendant Reamer on the following morning do not show deliberate indifference. Plaintiff sought immediate medical attention, but the amended complaint does not suggest that he was in any kind of apparent medical emergency despite his concerns. Mr. Reamer advised him of how to request medical care. As noted, plaintiff was moved to another cell within approximately one hour.

Finally, while the amended complaint states that the cell into which plaintiff was moved also had "feces smeared on the wall, door, and window", plaintiff does not explain whether he notified anyone of this, sought cleaning materials, or how long he was placed in that cell. This allegation is insufficient to state a claim of deliberate indifference against any defendant.

The balance of the amended complaint presents generalized complaints concerning the conditions in the jail and claims that provisions of the jail handbook have been violated. Plaintiff's complaints of occasional lockdowns and the use of specialized cells for disciplinary placements do not establish either the objectively serious conditions necessary to support an Eighth Amendment claim, or the deliberate indifference needed to support the subjective

portion of the Eighth Amendment analysis.[1] While the lack of access to common areas and the inconvenience of placement in a cell without furniture or a bed for short periods no doubt proved uncomfortable or inconvenient, these conditions, without more, do not state a claim for relief. Likewise, claims that the jail handbook has not been followed strictly are insufficient to state a constitutional violation.

For these reasons, the court concludes this matter must be dismissed for failure to state a claim for relief.

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed.

**IT IS SO ORDERED**.

DATED:  This 26th day of March, 2021, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge

---

[1] As explained in the NOSC, a prisoner must exhaust administrative remedies before filing a federal lawsuit involving prison conditions. 42 U.S.C. § 1997e(a). This exhaustion requirement, enacted as part of the Prison Litigation Reform Act, "is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  The NOSC also explained that plaintiff provided no information concerning his exhaustion on the claim that suicide prevention and close observation cells in the jail were used to house prisoners under disciplinary sanctions and found that the claim was subject to dismissal. Plaintiff's response does not refute that.